UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


KABIL ANTON DJENASEVIC,


v.                              Case No. 8:02-cr-424-T-17MAP
                                         8:09-cv-212-T-17MAP

UNITED STATES OF AMERICA.

_____


O R D E R

This cause is before the Court upon Defendant's timely filed second amended motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (Doc. cv-11, 12, and 13; cr-260). A review of the record demonstrates that, for the following reasons, the motion to vacate must be denied.

Background

1. On October 23, 2002, a federal grand jury in Tampa, Florida, returned a four-count indictment charging Kabil Anton Djenasevic with one count of conspiracy to possess 100 grams or more of a mixture or substance containing a detectable amount of heroin with intent to distribute it, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(I); two counts of possession of a quantity of a mixture or substance containing a detectable amount of heroin with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and one count of possession of 100 grams or more of a mixture or substance containing a detectable amount of heroin with intent to distribute it, in violation of 21 U.S.C. § 841(a) and (b)(1)(B)(I). Doc. cr-1.

2. On December 15, 2003, Djenasevic pleaded guilty to the indictment without a written plea agreement. Doc. cr-32. Two months later, Djenasevic filed a pro se motion to withdraw his guilty plea, contending that he was not guilty and had not understood the consequences of his plea. Doc. cr-38. On March 17, 2004, a United States Magistrate Judge conducted a hearing on Djenasevic's motion to withdraw his guilty plea. Doc. cr-45. The magistrate judge recommended that the Court deny Djenasevic's request, and the Court adopted the magistrate judge's recommendation. Docs. cr-46, cr-48.

3. On July 20, 2004, Djenasevic filed a second motion to withdraw his guilty plea, pointing out that the United States Supreme Court had issued its opinion in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), after this Court had denied his previous motion and asserting that, because that opinion significantly changed the law with respect to sentencing, the Court should permit him to withdraw his guilty plea. Doc. cr-52. On September 8, 2004, the Court conducted a hearing on Djenasevic's motion and subsequently entered an order granting his motion to withdraw his guilty plea. Docs. cr-65, cr-66.

4. After two continuances, the trial was set to begin on August 1, 2005. Docs. cr-83, cr-84, cr-92, cr-111. On the morning trial was set to begin, however, Djenasevic again pleaded guilty to the indictment without a written plea agreement. Docs. cr-125; Doc. cr-145 (transcript).

5. Less than one month later, on August 29, 2005, Djenasevic's counsel filed a motion to withdraw as counsel, stating that Djenasevic had demanded that he withdraw. Doc. cr-128. The Court conducted a hearing on the motion on September 1, 2005, during which the Court stated that the Court also had received a pro se motion from Djenasevic

requesting the Court to remove his counsel from the case. Doc. cr-235 at 2. As Djenasevic was complaining that his counsel had not filed motions that Djenasevic had wanted him to file, Djenasevic also stated that he had not entered his guilty plea in a knowing and intelligent manner. Doc. cr-235 at 8. He claimed that, at the time he had entered his guilty plea, he had thought he would be able to appeal the Court's earlier ruling denying a motion to suppress evidence. Doc. cr-235 at 9. Djenasevic's counsel stated, however, that the United States had not agreed to a conditional plea in this case and that Djenasevic had been aware of that fact. Doc. cr- 235 at 13. The magistrate judge denied Djenasevic's motion to appoint new counsel, stating that Djenasevic's appointed counsel had "ably counseled [him]." Doc. cr-235 at 21.

6. On September 12, 2005, Djenasevic's counsel filed a second motion to withdraw, stating that Djenasevic had "again indicated, in an intense and specific way, his extreme dissatisfaction with the performance of" his counsel. Doc. cr-138. The Court granted this motion and appointed Djenasevic new counsel. Doc. cr-139.

7. On October 4, 2005, Djenasevic's new counsel filed a motion to withdraw Djenasevic's second guilty plea, but the Court denied the motion without a hearing. Docs. cr-142, cr-146. 8. On March 3, 2006, the Court conducted Djenasevic's sentencing hearing. Docs. cr-160, cr-182 (transcript). During the sentencing hearing, Djenasevic submitted another pro se motion to withdraw his guilty plea, which the Court struck as improperly filed and denied on its merits, in the alternative. Doc. cr-182 at 108. The Court sentenced Djenasevic at the low end of his advisory guidelines range to 324 months' imprisonment on counts one and four, concurrent with 240 months' imprisonment on counts two and three and 120 months' imprisonment on count five, all to be followed by a total of sixty

months' supervised release. Docs. cr-160, cr-182 at 126-27.

9. Djenasevic directly appealed the final judgment to the United States Court of Appeals for the Eleventh Circuit, Appeal No. 06-11593.[1] On appeal, Djenasevic argued that (1) "he involuntarily pleaded guilty because his attorney erroneously advised him that he could apply to transfer service of his sentence in Montenegro," and (2) that his sentence was unreasonable. *United States v. Djenasevic*, 248 Fed.Appx. 135 at 140, 142 (11th Cir. 2007) (unpublished), *cert. denied*, 128 S.Ct. 1320 (2008).

10. On September 18, 2007, the United States Court of Appeals for the Eleventh Circuit affirmed the Djenasevic's conviction. *United States v. Djenasevic*, 248 Fed.Appx. 135 (11th Cir. 2007), *cert. denied*, 128 S.Ct. 1320 (2008) (unpublished). Docs. cr-249 (Mandate of USCA), cr-254.

11. On February 9, 2009, Djenasevic filed his original section 2255 motion. In its orders of February 12, 2009, and February 20, 2009, the Court directed Djenasevic to file an amended motion in compliance with the local rules. Docs. cv-4 and cv-8. On March 16, 2009, Djenasevic filed the instant amended section 2255 motion and supporting memorandum of law making several claims of receiving ineffective assistance of counsel as his grounds for relief. Docs. cv-11 and cv-12.

Factual Background

On August 1, 2005, before the jury voir dire began, the parties notified the Court that Djenasevic was prepared to plead guilty to the indictment without a written plea agreement, so long as the United States would not object to Djenasevic applying to the United States

---

[1] The Government attached copies of Djenasevic's and government's appellate briefs to its response as Attachments 1 and 2, respectively.

Department of Justice and the Republic of Yugoslavia to have Djenasevic serve his sentence in his home country of Yugoslavia. Djenasevic's counsel explained that the country of Yugoslavia no longer exists but, "[w]hile Montenegro used to be a part of Yugoslavia, it is today a separate sovereign and has a bilateral agreement with the United States regarding the transfer of prisoners." Djenasevic's counsel stated that Djenasevic understood that the Court could not order or recommend that Djenasevic serve his sentence in his home country. Counsel for the United States told Djenasevic and the Court that the United States Attorney's Office had "no control locally as to whether it would ever get approved by the Department of Justice or approved by the receiving country." She stated, however, that the United States "would have no objection to making his application, and then if both parties agree, which we have no idea or control over, then we have no objection to it happening." She clarified, however, "I'm not going to give him any commitment that it will happen or that we'll make it happen because we just simply can't do that." She later reiterated the extent of the United States' agreement: "[I]f he makes application, we won't object to his application. . . . [I]f . . . both parties agree, which has to happen, we're not going to intercede or object to that happening." The Court interjected, "So we all understand the government is going to more or less stand mute." Djenasevic's counsel replied, "Yes, Your Honor." The Court said further, "They're not going to object but they're not going to do anything to advance his application in any way, shape or form?" and counsel for the United States replied, "That's correct." Doc. cr-145 at 3-9.

The Court then conducted Djenasevic's plea colloquy, ensuring that he understood the charges against him, the penalties he faced, and the nature and consequences of his plea and ascertaining the voluntariness of his plea. Doc. cr-145 at 14-59. At the beginning

of the colloquy, the Court stated, "[I]t's the Court's understanding that if I accept his open plea at this time, the Court will have no objection to that procedure with a clear understanding the government does not object but will not do anything active to promote or deter the completion of that application; correct, Miss Peluso?" to which counsel for the United States replied, "That's correct, Your Honor." The Court explained to Djenasevic:

> I have to ask you some questions under oath to see if you are making this plea freely and voluntarily without any threats, force or promise, except the promise in open Court by the Government that they will not object to your attempt to have the transfer of your prison term to the sovereign state of Montenegro and likewise the Court will not object to the service– transfer of the service of your sentence to the sovereign state of Montenegro.

> Neither the government nor the Court will do anything to actively promote that or deter that. With that exception that should be classified probably as a promise.

Doc. 145 at 14-16.

Djenasevic stated that he knew that he faced a sentence of ten years' to life imprisonment. The Court specifically asked Djenasevic whether he understood that he would not be permitted to change his mind about his guilty plea later and Djenasevic replied, "I want to just acknowledge and just face the consequences of my action and put this behind me and try to get to my family as quick as possible." Doc. cr-145 at 19- 20, 33.

Addressing the voluntariness of his plea, the Court asked whether anyone had made any promises to Djenasevic but reminded Djenasevic that the United States had promised not to "do anything to advance [his transfer to Montenegro] nor to deter that[.]" Djenasevic acknowledged that he understood that the local United States Attorney's Office could not bind the Department of Justice and the United States Attorney General. Doc. cr- 145 at 39- 40.

Addressing the factual basis for Djenasevic's guilty plea, the United States stated that, if the case had gone to trial, the United States could have proved that, in the early fall of 2000, Djenasevic and his cousin had begun to transport quantities of heroin from New York to Tampa and to distribute the heroin to low-level distributors in the Tampa area. Djenasevic had started out with ounce quantities of heroin but had increased those quantities until his New York source had given him a half-kilogram of heroin to distribute. He ultimately he had a falling out with his New York source, but his cousin had obtained a half-kilogram of heroin to distribute from a different source in Chicago. Doc. 145 at 49-50. Djenasevic and his cousin had distributed all of the heroin in the Tampa area to others, including to a person named Richard Barthell. Barthell had sold quantities of heroin that he had obtained from Djenasevic to an undercover officer on at least five occasions in November and December of 2000. Barthell then had begun to cooperate with the United States. Doc. cr-145 at 50-51.

On one occasion, Barthell and an undercover officer had purchased an ounce and a half of heroin from Djenasevic for $4200 in marked bills. On a second occasion, Barthell and the undercover officer had purchased an ounce of heroin from Djenasevic for $3200. During this transaction, Djenasevic had told the undercover officer that he could sell him a half-kilogram of heroin if the officer would travel with him to New York or Chicago, where they each could obtain a half-kilogram of heroin. Doc. cr-145 at 51- 52.

On January 3, 2001, Barthell called Djenasevic and told him that he wanted to buy a half-ounce of heroin. Djenasevic told Barthell that he had 200 grams of heroin available to sell him, but Barthell said that he only wanted a half-ounce. They arranged to meet at a restaurant, where Djenasevic had been arrested. At the time, Djenasevic had a half-

ounce of heroin with him. A search of Djenasevic's condominium and a safe deposit box had revealed $20,000 in cash, two firearms, 200 grams of heroin, and another $45,000 in cash. Some of the cash in the safe deposit box included the marked bills that the undercover officer had paid Barthell during the controlled buys. Djenasevic had cooperated after his arrest, admitting that he had obtained heroin from New York, obtaining ounce quantities and a half-kilogram of heroin. He also admitted that he had obtained another half-kilogram of heroin from Chicago. Doc. cr-145 at 53- 55.

After the United States had recited all of these facts during the plea colloquy, the Court asked Djenasevic's counsel, "[Y]ou would agree that the government could establish those facts in their case in chief?" and Djenasevic's counsel replied, "Yes, Your Honor." The Court stated further, "And so that we're all clear, we've got a conspiracy from mid-fall of 2000 to January 3, 2001, that you knowingly and willfully were involved in to possess with intent to distribute one kilogram or more of . . . heroin." Djenasevic replied, "That's correct." He also acknowledged that he faced a sentence of ten years' to life imprisonment. Doc. 45 at 57.

The Court accepted Djenasevic's guilty plea and scheduled the case for sentencing on September 8, 2005. Yet, before the scheduled sentencing hearing, the Court permitted Djenasevic's appointed counsel to withdraw and appointed him new counsel, who moved to withdraw Djenasevic's guilty plea, asserting,

> [Djenasevic] alleges that he is not, in fact, guilty and had no intention to waive any rights including, but not limited to, the right to question the amount of heroin involved, the right to further question the search and seizures involved in this case, the right to a jury trial and to confront witnesses against him.

Doc. cr-142 at 1. In its order denying Djenasevic's motion, the Court found that

Djenasevic's allegations had "no basis in fact" and that Djenasevic had entered his guilty plea "freely, voluntarily, and with the requisite knowledge." Doc. cr-146.

At the beginning of Djenasevic's March 3, 2006, sentencing hearing, Djenasevic complained that his new counsel, whom the Court had appointed at Djenasevic's request to replace the previously appointed counsel, had not sufficiently communicated with him regarding the PSR. Doc. cr-182 at 3-4. Djenasevic's new counsel explained, however:

> We went over it in person. We went over it in writing. We went over it on the phone. We discussed about–we discussed it with his sentencing research people. We discussed his sentencing research with him by phone, by letter, in person.

Doc. cr-182 at 4. Despite Djenasevic's guilty plea, Djenasevic continued to complain that his various attorneys had not sufficiently pursued a suppression argument or an entrapment defense. Doc. cr-182 at 6-10. He insisted he had had no alternative but to plead guilty because none of his lawyers had pursued evidence that would exonerate him. Doc. cr-182 at 10. The Court informed Djenasevic that, because he had entered a guilty plea, he could not pursue those arguments. Doc. cr-182 at 10-15.

Among other things, Djenasevic objected to the probation office's failure to recommend a reduction to his offense level for acceptance of responsibility. The probation officer maintained that Djenasevic did not deserve the reduction because he had obstructed justice and also because he had not tendered a guilty plea in a timely manner. The United States agreed, stating that the United States had "completely prepared for trial and spent a lot of resources getting ready for trial" and had "brought in people from London and various different prisons." Indeed, the United States asserted that the United States had arranged to bring a witness from London twice due to Djenasevic's failure to enter a guilty

plea until the last minute. Doc. cr-182 at 45-47.

The United States also pointed out that Djenasevic never had truly accepted responsibility, as he had continued to attempt to manipulate the Court, blaming other people for his actions. Indeed, during the sentencing hearing, he continued to dispute the amount of heroin to which he already had pleaded guilty and he maintained that he had been entrapped. Doc. cr-182 at 47-50.

The Court overruled Djenasevic's objections to the PSR and adopted the undisputed facts and advisory guideline applications in the PSR. Regarding the controverted factual statements and guideline applications, the Court adopted the position of the probation office as stated in the PSR and the PSR addendum. The Court, therefore, determined that Djenasevic had a total sentence guidelines offense level of thirty six, with a criminal history category VI, for an advisory sentencing guidelines range of 324 to 405 months' imprisonment. Doc. cr-182 at 51.

Djenasevic also reminded the Court of the parties' stipulation that the United States and the Court would not "stop or do anything to stop [his] prisoner transfer." The United States maintained that the United States had stipulated "only that this office, the United States Attorney's Office, would take no position on [the transfer of his prison sentence to Montenegro] and neither would [the court]." Doc. 182 at 88. Djenasevic did not dispute the United States' description of the agreement but asserted that, if the Court did not award him a downward adjustment to his offense level for acceptance of responsibility, he could not qualify for a transfer to a prison in Montenegro. Djenasevic did not assert that the United States had breached its agreement with him, did not seek specific performance of the agreement, and did not request to withdraw his plea as a result of any alleged breach.

See Doc. cr-182 at 89. The Court replied to Djenasevic, "Well, the truth of the matter is you did not accept responsibility." Doc. cr-182 at 88-89. The Court explained:

> We accepted your plea. You admitted your guilt. You admitted your guilt to the responsibilities. You have challenged repeatedly from the time that we accepted your plea and didn't go forward with the trial, you have constantly maintained that you want to argue about the facts in this case, when that is all over.
>
> And then you expect the government and the probation department to say, "That's okay, he still gets acceptance of responsibility."
>
> At the time that your plea was taken and Mr. Weisbrod was your attorney, everything that was done was as reasonable as it could be under the circumstances at the time. And since that time you have still tried to maintain, even through your attorney Mr. Doherty, that you want things to be calculated your way and really to ignore the fact that you have admitted your guilt.
>
> We will honor the arrangements that were made at the time that the plea was taken. But insofar as your acceptance of responsibility and you're being awarded those points, the main person who has prevented that from happening is you.

Doc. cr-182 at 90. The Court also rejected all of Djenasevic's other arguments for a downward departure from his advisory sentencing guidelines range. Doc. cr-182 at 112. Stating that the parties would honor the promise regarding Djenasevic's attempt to serve his sentence in Montenegro, the Court stated further, "There's no objection by the government and no objection by the Court to your deportation and for your acceptance in the prison in Montenegro, if they accept you." Doc. cr-182 at 112.

Djenasevic also filed a pro se motion to withdraw his guilty plea and to dismiss the indictment, in which he listed alleged improprieties during the investigation of his offenses and alleged failures by the United States to comply with discovery obligations. Doc. cr-161; see Doc. cr-182 at 107. The Court struck the pro se motion as improperly filed and, in the alternative, denied the motion on its merits. Doc. 182 at 108.

Determining a reasonable sentence for Djenasevic, the Court stated that the Court "has to look at all of the factors in the [PSR], has to look at the advisory guidelines, has to look at your criminal history regardless of how it was caused, has to look at 18 U.S.C. 3553(a)(1) through (7)[.]" Doc. cr-182 at 120. Reviewing Djenasevic's failure to accept responsibility for his criminal behavior over the years and his extensive criminal history, the Court denied Djenasevic's request for a reduction to his offense level pursuant to section 5K2.0 or, in the alternative, for a downward deviation pursuant to 18 U.S.C. § 3553(a) and sentenced Djenasevic at the low end of his advisory guidelines range to 324 months' imprisonment on counts one and four concurrent with 240 months' imprisonment on counts two and three and with 120 months' imprisonment on count five. Doc. cr-182 at 120-126. The Court found "that a sentence at the low end of the applicable guideline range sufficiently addresses the seriousness of the defendant's criminal conduct in the offense of conviction and, otherwise, meets the ends of justice." Doc. cr-182 at 129-30. The Court also found that the sentence imposed "is reasonable, adequate, and sufficient." Doc. cr-182 at 130. Djenasevic did not voice any objection to the sentence imposed or to the manner in which it had been pronounced, other than the objections he already had raised. Doc. cr-182 at 130.

Djenasevic now challenges the validity of his plea claiming he had been coerced into entering his guilty plea by the Court's "impermissible interference" in the plea process (Djenasevic's Ground 1, Doc. cv-11 at 3), and a factual basis had not been established (Djenasevic's Ground 5, Doc. cv-11 at 4). Djenasevic also raises two claims of ineffective assistance of counsel which occurred prior to his entering his guilty plea: counsel failed to challenge the legality of the search of his girlfriend's condo based on Djenasevic's alleged

consent (Djenasevic's Ground 3, Doc. cv-11 at 3), and failed to ensure his rights under the Vienna Convention (Djenasevic's Ground 4, Doc. cv-11 at 4).

After a conviction based on a guilty plea has become final, such as in the Djenasevic's case, a petitioner may challenge only the knowing and voluntary nature of the plea, unless the record demonstrates that the district court lacked the power to enter the conviction or impose the sentence. *United States v. Broce*, 488 U.S. 563 (1989); *United States v. Kaiser*, 893 F.2d 1300 (11th Cir. 1990). It is well settled that a "voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings." *United States v. Patti*, 337 F.3d 1317, 1320 n. 4 (11th Cir. 2003).

Most errors in Fed. R. Crim. P. 11 plea colloquy will not support collateral relief. *United States v. Timmreck*, 441 U.S. 780 (1979); *Holmes v. United States*, 876 F.2d 1545 (failure to advise of mandatory minimum) (11th Cir. 1989); *Lilly v. United States*, 792 F.2d 1541 (11th Cir. 1986) (failure to advise that if court does not accept recommendation as to sentence petitioner will not be entitled to withdraw plea). A defective plea colloquy that would have resulted in vacation of a conviction on direct appeal will not necessarily result in collateral relief; petitioner is confronted with a much higher level of scrutiny on a Section 2255 challenge to a guilty plea. *United States v. Patterson*, 739 F.2d 191, 194-95 (5th Cir. 1984).

Djenasevic is barred from raising a challenge to the factual basis of his plea in a 28 U.S.C. § 2255 motion. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir.1992). In the context of a Section 2255 motion, "a defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Id.* This waiver includes

13

constitutional claims. *Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992) (pre-plea ineffectiveness waived); *Dermota v. United States*, 895 F.2d 1324 (11th Cir.) (double jeopardy claim waived), *cert. denied*, 498 U.S. 837 (1990). Moreover, guilty pleas foreclose most claims from collateral attack. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Dermota v. United States*, 895 F.2d 1324, 1326 (11th Cir.) (double jeopardy claim waived), *cert. denied*, 498 U.S. 837 (1990).

In the instant matter, Djenasevic claims he was coerced in part by the Court's remarks at a sidebar discussion held during his suppression hearing. Djenasevic asserts the Court committed impermissible interference and quotes portions of the transcript of the hearing as his evidence. Doc. cv-12 at 9-11. Moreover, Djenasevic alleges the prosecutor indirectly threatened him to enter a guilty plea by expressing her opinion that his wife, Helen Mafilas, could be indicted for aiding Djenasevic and for writing a bad check. Doc. cv-12 at 4. Based on the Court's remarks at the suppression hearing in addition to the government's alleged threat and his own counsel's complacency, Djenasevic argues his guilty plea is invalid.

When the Court's remarks at sidebar during Djenasevic's suppression hearing are reviewed in their entirety, the record is clear the Court considered the full circumstances of this case and was therefore stressing the benefits of cooperation. See Doc. cr-247 at 233-239. No threats, implied or otherwise, were made by this Court nor could any remarks made by the Court be interpreted as coercion. The Court was helping Djenasevic see the options he had if he cooperated. The Court still prepared for trial the following week. In fact, before concluding the hearing, the Court stressed to both the government and defense, to be prepared to proceed to trial on Monday. Doc. cr-247 at 241-242.

Furthermore, there were no indirect threats made by the government as Djenasevic insinuates. Djenasevic's wife, Helen Mafilas Djensavic, testified via satellite from South Africa at the suppression hearing. Under cross-examination, the government questioned Mrs. Djenasevic as to her reasons for leaving the United States before a check she wrote for Djenasevic's bond bounced for insufficient funds and going to South Africa. The government also inquired as to her reason for not returning to the United States for the hearing. While the government did ask if she was aware of the legal consequences of writing worthless checks or for being an accessory after the fact by helping someone flee jurisdiction, these questions were designed to challenge her credibility and motive to testify and did not in anyway or form, threaten Djenasevic that she would be charged with these violations had he not entered a guilty plea. Doc. cr-247 at 24-57, 61-63.

A simple review of the Court's Rule 11 plea colloquy demonstrates that Djenasevic did, in fact, enter a knowing and voluntarily guilty plea. When questioned by the Court as to the voluntariness of his guilty plea, Djenasevic stated that he had not been threatened into entering his guilty plea. Doc. cr-145 at 39. In concluding the change of plea hearing, the Court found that Djenasevic's guilty plea "is not produced by threats, force, or promise except those promises dictated into the record." Doc. cr- 145 at 59. Thus, the record clearly demonstrates Djenasevic's guilty plea is valid and was entered freely, without any coercion from either the Court or the government, and his claim must be denied.

Next, Djenasevic claims no factual basis was established at his change of plea hearing and that both his District Court counsel as well as his appellate counsel were ineffective for failing to challenge his conviction on this basis. Doc. cv-11 at 4. Again, a simple review of the plea colloquy clears the record. The government recited the facts it

would prove had this case proceeded to trial. Doc. cr-145 at 49-57. Thereafter, the Count specifically found the government could establish a prima facie case. Doc. cr- 145 at 58. Djenasevic's claim is wholly without merit and his claim must be denied.

Djensavic next raises two claims of receiving pre-plea ineffective assistance of counsel - specifically, that his counsel failed to challenge the legality of the search of his girlfriend's condominium claiming he did not have authority to give consent for the search (Ground 3, Doc. cv-11 at 3) and counsel failed to ensure his rights under the Vienna Convention (Ground 4, Doc. cv-11 at 4). As discussed above, in the context of a Section 2255 motion, "a defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." Id. This waiver includes constitutional claims. Wilson v. United States, 962 F.2d 996 (11th Cir. 1992) (pre-plea ineffectiveness waived). By pleading guilty unconditionally, knowingly and voluntarily, Djenasevic waived his claims of pre-plea ineffectiveness of counsel and his claims must be denied.

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

The two-pronged Strickland test is applicable to ineffective assistance of counsel

claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Hill,* 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill,* 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial. *Upshaw v. United States*, 2008 WL 638261 at *1 (M.D. Fla., Mar. 5, 2008) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Finally, vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.

1991).

Specifically, Djenasevic makes the following allegations of receiving ineffective assistance in this case:

1. Counsel failed to challenge the validity of Djenasevic's guilty plea based on coercion. (Ground 1, Doc. cv-11 at 3)

2. Counsel failed to object at sentencing to the government's breach of plea agreement when it advocated against an acceptance of responsibility. (Ground 2, Doc. cv-11 at 3)

3. Counsel failed to investigate the circumstances surrounding the search of the condo, specifically whether Djenasevic had the authority to give consent. (Ground 3, Doc. cv-11 at 3)

4. Counsel should have acted to protect Djenasevic's rights under the Vienna Convention by bringing to the Court's attention that the government failed to notify Djenasevic of his right to contact his consulate. (Ground 4, Doc. cv-11 at 4)

5. Counsel failed to object to the Court's failure to establish a factual basis before accepting Djenasevic's guilty plea. Further, appellate counsel was ineffective as well for failing to raise the issue on direct appeal. (Ground 5, Doc. cv-11 at 4)

As discussed previously, Ground 1 and Grounds 3 through 5 are not cognizable in post-conviction attacks on guilty pleas. As to Djenasevic's claim that his guilty plea is not valid because he was coerced (Ground 1), he does not make a specific ineffective assistance of counsel argument, but does state in his 2255 motion that:

> All Grounds 1-5 (inclusive) are being raised for the first time because all the grounds address trial and appellate counsel ineffectiveness and are appropriately addressed on a postconviction motion.

Doc. cv-11 at 4.

Moreover, even if Djenasevic's claims were cognizable, he can demonstrate no harm. Regarding any challenge to consent (Ground 3), Djenasevic does not say he did not give consent, only refers to his alleged consent and asserts he did not have authority to grant consent in any case. The Fourth Amendment allows law enforcement authorities to search property without a warrant or probable cause upon receiving valid consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973). A third party may give valid consent if he has common authority over "or other sufficient relationship" to the property. *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974). Even if the third party does not have the requisite common authority or a sufficient relationship, the Fourth Amendment is not violated when an officer "ha[d] an objectively reasonable, though mistaken, good-faith belief" that he has obtained valid consent. *United States v. Brazel*, 102 F.3d 1120, 1148 (11th Cir. 1997).

In this case, Special Agent Ronald Geer with the Drug Enforcement Agency (DEA) testified at the suppression hearing that when he interviewed Djenasevic on the day of his arrest, Djenasevic told him he lived with his girlfriend at the condominium in question, while also renting out a hotel room that he used as a stash house to process heroin for distribution. When Agent Geer asked Djenasevic for consent to search either the condo or the hotel room, Djenasevic gave his consent and also gave Geer a key for the condo. To ensure Djenasevic had authority to give consent to search the condo, Agent Geer asked him if "he had free and complete access to the condominium, whether he could come and go as he pleased, and if there were any restricted areas in the condominium that he was not allowed or permitted to enter." In response to his questions, Djenasevic told Agent Geer he had complete access and gave him a key to the condo. Doc. cr-247 at 84- 86. Based

on Djenasevic's statements to Agent Geer, the search team had a reasonable belief that they had consent, even if mistaken, thus as stated above, no Fourth Amendment violation occurred.

Similarly, no harm occurred by his counsel's failure to challenge the alleged violation of Djenasevic's rights under the Vienna Convention (Ground 4). Djenasevic claims, "The record ably supports the fact that the government failed to notify Movant of his right to contact his consulate." Doc. cv-12 at 30. Djenasevic provides no record cites to support this allegation.

The Vienna Convention provides that upon arrest, a foreign national has the right to contact the consular post of his home country, and that the arresting authorities must inform the detainee of that right. Vienna Convention on Consular Relations, art. 36(1)(b), Apr. 24, 1963, 21 U.S.T. 77, 101, T.I.A.S. No. 6820.[2] The United States and Canada are parties to the Vienna Convention. *See Maharaj v. Secretary for Dept. of Corrections*, 432 F.3d 1292, 1304 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006); *United States v. De La Pava*, 268 F.3d 157, 165 n.7 (2d Cir. 2001). Because Djenasevic's claim regarding the infringement of his rights under the Vienna Convention does not implicate the subject matter jurisdiction of the District Court and Djenasevic voluntarily entered an unconditional guilty plea, see Doc. 125, Djenasevic waived his claim. *See United States v. Patti*, 337 F.3d 1317, 1320 n.4 (11th Cir. 2003) ("[A] voluntary, unconditional guilty plea waives all

---

[2]  The Convention specifically provides  [I]f he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph. Vienna Convention on Consular Relations, art. 36(1)(b), Apr. 24, 1963, 21 U.S.T. 77, 101, T.I.A.S. No. 6820.

nonjurisdictional defects in the proceedings.").

Even if Djenasevic did not waive his rights under the Vienna Convention, his counsel did not render ineffective assistance by failing to challenge an alleged violation of Djenasevic's rights under the Vienna Convention. Djenasevic still would be entitled to no relief under the Vienna Convention because the Vienna Convention itself disclaims any intent to create individual rights, stating that its purpose "is not to benefit individuals but to ensure the efficient performance of functions by consular posts." Preamble to Vienna Convention, 21 U.S.T. 77, 79. In 2008, the Eleventh Circuit stated:

> The preamble to the Vienna Convention is clear that the drafters did not intend to create individual rights. It states that the signatories "[r]ealiz[ed] that the purpose of such privileges and immunities [created by the Treaty] is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective States." Vienna Convention on Consular Relations, pmbl. (emphasis added). Indeed, this language has led this court to conclude that "the Vienna Convention itself disclaims any intent to create *828 individual rights[.]" *United States v. Duarte-Acero*, 296 F.3d 1277, 1281-82 (11th Cir.2002); *see also Maharaj v. Sec'y for the Dep't of Corr.*, 432 F.3d 1292, 1307 (11th Cir.2005) (containing clear language that the Convention did not create individual rights); United States v. Rodriguez, 162 Fed.Appx. 853, 857 (11th Cir.2006) (relying on *Duarte-Acero* and concluding that "[t]he Vienna Convention does not confer judicially enforceable individual rights").

*Gandara v. Bennett*, 528 F.3d 823, 827-28 (11th Cir. 2008).

Simply put, relief from his conviction is not an available remedy for a violation of the Vienna Convention. *See United States v. Cordoba-Mosquera*, 212 F.3d 1194, 1196 (11th Cir. 2000) (rejecting defendants' argument that certain evidence should be excluded, their convictions vacated, and/or their indictments dismissed due to government's noncompliance with Vienna Convention) (citing *United States v. Lombera-Camorlinga*, 206 F.3d 882, 885 (9th Cir. 2000) (en banc) (holding that exclusion of evidence obtained as

result of post-arrest interrogation is not available as remedy for Vienna Convention violation)); *see also United States v. Li*, 206 F.3d 56, 60, 62 (1st Cir. 2000) (en banc) (holding that appropriate remedies for Vienna Convention violation do not include suppression of evidence or dismissal of indictment)).

Still, if vacating a conviction was an available remedy for Vienna Convention violation, that remedy would not be available to Djenasevic absent a showing of prejudice. *See Cordoba-Mosquera*, 212 F.3d at 1196. Djenasevic claims that had he had contact with the consulate from Montenegro, he would have learned of the political strife caused from the recent Kosovo war and would never have tried to apply for transfer to Montenegro; thus, he would have insisted on proceeding to trial. In sum, Djenasevic has waived his claim under the Vienna Convention and is entitled to no relief based upon the asserted violation of the Vienna Convention.

Likewise, Djenasevic's claim that his counsel failed to ensure a factual basis had been established before his guilty plea was entered, and that his appellate counsel failed to raise the issue on direct appeal (Ground 5), is without merit. As discussed above, the government recited the facts of the case during Djenasevic's change of plea hearing, Djenasevic agreed with the facts, and the Court held that a factual basis had indeed been established. Doc. cr-145 at 56-58. There again, no harm had befallen Djenasevic.

Lastly, Djenasevic claims his counsel provided ineffective assistance when he failed to object at sentencing to the government's advocacy against a downward departure for acceptance of responsibility which constituted a breach of plea agreement. By not preserving the issue for direct appeal, Djenasevic claims he was prejudiced because the Eleventh Circuit did not apply the de novo standard of review, but rather reviewed for plain

error as a matter of law (Ground 2). Doc. cv-11 at 3. Djenasevic asserts that had plain error

been applied, he would have prevailed. Doc. cv-12 at 14.

When reviewing an allegation of a breached plea agreement for plain error, a Court

of Appeals should examine whether the alleged breach was "'so obvious and substantial

that failure to notice and correct it affect[ed] the fairness, integrity or public reputation of the

judicial proceedings.'" *See United States v. Fant*, 974 F.2d 559, 565 (4th Cir. 1992) (quoting

*United States v. Navejar*, 963 F.2d 732, 734 (5th Cir. 1992)). In Djenasevic's direct appeal,

the Eleventh Circuit held:

> The record here demonstrates that the government only promised not to
> oppose an application to the DOJ for the transfer of Djenasevic's sentence.
> There was no promise with regard to the acceptance of responsibility
> reduction. Furthermore, Djenasevic admits that acceptance of responsibility
> is merely one of the factors considered by the DOJ and is not dispositive
> regarding whether a request for transfer will be granted. As such, the
> government's opposition to an acceptance of responsibility reduction for
> Djenasevic was not a breach of the plea agreement.

*United States v. Djenasevic*, 248 Fed.Appx. 135, 142 (11th Cir. 2007), *cert. denied*, 128

S.Ct. 1320 (2008) (unpublished). Thus, Djenasevic fails to establish how he was prejudiced

by the Eleventh Circuit's standard of review on this issue or by his counsel's actions.

In sum, Djenasevic's counsel did not render constitutionally ineffective assistance

with respect to the grounds raised herein. Therefore, as Djenasevic has failed to meet both

*Strickland* prongs, his claims of receiving ineffective assistance of counsel must be denied.

Accordingly, the Court orders:

That Djenasevic's amended motion to vacate, set aside, or correct an allegedly

illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. cv-11, 12, and 13; cr-260) is denied.

The Clerk is directed to enter judgment against Djenasevic in the civil case and to close

that case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on September 25, 2009.


ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE


AUSA:  Kathy J. M. Peluso
Kabil Anton Djenasevic